IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HENNIS WASHINGTON, *et al.,* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.  ) | CASE NO.  1:13-cv-610-WEF |
| ) | (WO – Do Not Publish) |
| UTILITY TRAILER ) | |
| MANUFACTURING COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Utility Trailer Manufacturing Company's ("UTM") Motion to Dismiss the First Amended Complaint (Doc. #18).  This case is brought by twelve plaintiff-employees of UTM who allege that they were and still are subjected to racial harassment by co-workers and supervisors.  Plaintiffs filed their original complaint on August 27, 2013, and UTM moved to dismiss the complaint, or, alternatively, for a more definite statement.  (Docs. ##1, 12.)  Since the Court agreed that the original complaint was poorly pled, the Court granted UTM's motion for a more definite statement without ordering briefing on the motion to dismiss.  (Doc. #14.)  On October 18, 2013, Plaintiffs filed a First Amended Complaint, and UTM again moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docs. ##16, 18.)  The Court held oral argument on UTM's motion to dismiss on April 29, 2014.  After considering the pleadings, the parties briefs, and with the benefit of oral argument, the Court finds that UTM's Motion to Dismiss

1

the First Amended Complaint (Doc. #18) is due to be DENIED.

## I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1367.  Additionally, Defendants have not argued that the Court does not have personal jurisdiction over them.  Pursuant to 28 U.S.C. § 1391, venue is appropriate in this district.

## II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the court accepts the plaintiff's allegations as true and reads them in the light most favorable to the plaintiff.  *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted).  Further, a district court must favor the plaintiff with "all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully."  *Id.*  While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."

*Id.* (internal quotation and citations omitted).  Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice.  *Id.*  Courts are also not "bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. STATEMENT OF FACTS

Since this case is before the Court on a Motion to Dismiss, the Court accepts the following allegations in Plaintiffs' First Amended Complaint as true:

The plaintiffs in this case are the following twelve employees of UTM: Hennis Washington ("Washington"), Frederick Green ("Green"), Todd Hooks ("Hooks"), Keleen Farrier ("Farrier"), Lawrence Silar ("Silar"), Daryl Lindsey ("Lindsey"), Robert Edwards ("Edwards"), Johnny Baldwin ("Baldwin"), Bobby Terry ("Terry"), Timothy Caldwell ("Caldwell"), Nick Whitfield ("Whitfield"), and Jimmy Curry ("Curry").  Each plaintiff alleges facts to support his claim that he experienced a racially hostile work environment while on the job for UTM.

Unlike the original complaint, which alleged identical facts for the twelve plaintiffs collectively, the First Amended Complaint alleges facts for each plaintiff individually.  However, the individual allegations are, for the most part, identical for each plaintiff and are simply copied and pasted twelve times.  Each plaintiff individually alleges the position he occupies at UTM and when he began working there.  (Doc. #16, ¶¶ 19, 35, 51, 67, 83, 99, 115, 131, 147, 163, 179, 195.)  Although most Plaintiffs allege they have been employees at UTM since approximately 2010, Terry has worked for UTM since 1989 and Baldwin has

3

worked there since 1993. (Doc. #16, ¶¶ 147, 131.) Each plaintiff also alleges a litany of racial statements that were "made by white supervisors and co-workers" and that each plaintiff "witnessed and/or is aware [of]." (Doc. #16, at ¶¶ 22, 38, 54, 70, 86, 102, 118, 134, 150, 166, 182, 198.) These paragraphs contain a list of racial epithets, more or less the same for each plaintiff, but do not state: (1) who made the statements; (2) whether the statements were made by co-workers or supervisors; (3) whether the statements were directed at Plaintiffs or were made in Plaintiffs' presence; (4) which statements were witnessed by which Plaintiffs and which statements were statements Plaintiffs were aware of but did not witness; (5) approximately when the statements were made; or (6) the approximate frequency with which such statements were made.[1]

In addition to claiming to have experienced or been aware of racial epithets, Plaintiffs each allege that they witnessed or were aware of racially offensive graffiti in the restrooms, including "the Brotherhood has struck the first blow, now it's time for the whites to stick together," "KKK," "nigger," and "we hate niggers." (Doc. #16, ¶¶ 26, 42, 58, 74, 90, 106, 122, 138, 154, 170, 186, 202.) Plaintiffs name five to ten co-workers and supervisors who "subjected [them] to harassment" and told racially offensive jokes and stories in Plaintiffs' presence and in the presence of other black employees. (Doc. #16, ¶¶ 24–25, 40–41, 56–57,

---

[1] With respect to the frequency of the epithets, the Court is aware that Plaintiffs further allege, regardless of when each employee began working at UTM, that the harassing conduct "has been continuing in nature . . . and is still continuing today." (Doc. #16, at ¶¶ 31, 47, 63, 79, 95, 111, 127, 143, 159, 175, 191, 207.) As with so many allegations in the First Amended Complaint, this allegation is vague and imputed generically to all twelve plaintiffs, even though their dates of employment range from beginning in 1989 to beginning in 2012.

72–73, 88–89, 104–05, 120–21, 136–37, 152–53, 168–69, 184–85, 200–01.) The list of co-workers and supervisors alleged to have said these things is largely overlapping for each plaintiff, but Plaintiffs make allegations particular co-workers and supervisors on an individual basis. Each plaintiff further alleges that white employees wore T-shirts with rebel flags on them, that a rebel flag was draped on the door to the restroom, and, without further elaboration, that "there have been references to the KKK and KKK symbols." (Doc. #16, ¶¶ 27, 43, 59, 75, 91, 107, 123, 139, 155, 171, 187, 203.) Finally, each plaintiff alleges he "repeatedly complained" about the alleged racial harassment to several named members of management and Human Resources, as well as to two third-party representatives of the company.[2] (Doc. #16, ¶¶ 28, 44, 60, 76, 92, 108, 140, 156, 172, 188, 204.)

## IV. DISCUSSION

Plaintiffs bring a claim for racial harassment pursuant to 42 U.S.C. § 1981 (Count 1) as well as state law claims for outrage (Count 2) and negligent/wanton supervision/training/retention (Counts 3–5). Defendants move to dismiss all counts. Defendants argue first that the racial harassment claim in Count 1 is not pled with the specificity required by *Twombly* and *Iqbal* and as required in the Court's first order granting Defendants' motion for a more definite statement. Defendants move to dismiss Plaintiffs' claims for outrage on the grounds that the allegations do not rise to the level of extreme and

---

[2] This allegation is repeated verbatim for each plaintiff except Edwards. The First Amended Complaint alleges in his case only that "Edwards is aware of other African-Americans who have repeatedly complained" about the hostile work environment. (Doc. #16, at ¶ 124.)

5

outrageous conduct under Alabama law. Finally, Defendants move to dismiss the negligent supervision/training/retention claims because they are dependent on the existence of the underlying state law tort of outrage, which, they argue, is due to be dismissed.

**A.     Section 1981 Racial Harassment**

In its order granting UTM's motion for a more definite statement, the Court noted that Plaintiffs' original complaint made allegations as to all Plaintiffs in an undifferentiated manner, failed to specify who made which statements to which Plaintiffs, and generally failed to allege claims in such a way as to allow UTM to know how to answer the allegations. (Doc. #14.)  Rather than wasting the parties' and the Court's time with briefing UTM's motion to dismiss and issuing a Memorandum Opinion and Order, the Court granted UTM's alternative motion for a more definite statement and allowed Plaintiffs to file an amended complaint. The point of the Court's order was to put Plaintiffs on notice that each plaintiff must allege sufficient facts to plausibly state a claim for that particular plaintiff on an individual basis.

Unfortunately, Plaintiffs filed a First Amended Complaint that is only a marginal improvement at best. Count One now includes separate headings for each plaintiff, but the allegations for each plaintiff are simply repeated, copy-and-paste style, twelve times. As a result, Plaintiffs' complaint has expanded from twelve pages to thirty-eight but adds very little new information or substance. The new information that is provided, such as the dates on which each employee began working for UTM and the supervisors to whom Plaintiffs reported the alleged harassment, is helpful. However, the First Amended Complaint still

suffers from the same lack of specificity as the original complaint and continues to treat all twelve plaintiffs identically.

The Court cannot help but notice the similarities between the complaint in this case and that in *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955 (11th Cir. 2008). In that case, Judge Tjoflat noted the confusion, unnecessary delay, and error the plaintiffs' shotgun pleading caused, beginning with the district court and continuing throughout the appeal. 516 F.3d at 979–84. In fact, the law firm Judge Tjoflat reprimands in the *Davis* case, *see id.* at 979–80 n. 55, is the same firm representing Plaintiffs in this case. The complaint in *Davis* was brought by nine current and former employees of Coca-Cola Bottling Co. Consolidated ("CCBCC") who alleged CCBCC engaged in a pattern and practice of discriminating against black employees with respect to hiring, promotion, pay, a racially hostile work environment, and light work assignments. *Id*. at 961. Like the complaint in this case, the complaint in *Davis* involved multiple plaintiffs and was not brought as a class action. Also like the original complaint in this case, the complaint in *Davis* made collective, undifferentiated allegations for the plaintiffs as a whole. *Id.* at 963–64. For instance, the complaint in *Davis* alleged that the plaintiffs suffered race discrimination in "pay, raises, benefits, ability to advance, and right to be free of racial discrimination, harassment and intimidation, and other terms and conditions of employment." *Id*. at 980. Concerning this allegation, Judge Tjoflat said:

> This all-encompassing discrimination gave the eight named plaintiffs (and the unnamed members of their class) untold causes of action, all bunched together in one count contrary to

> the requirements of Federal Rules of Civil Procedure 10(b). With one exception–the "ability to advance," which became the foundation for plaintiffs' "promotion" claims–Count I failed explicitly to link a particular plaintiff to a particular cause of action . . . No competent lawyer–whether skilled in Title VII litigation or not–could compose an answer to these sweeping and multifaceted acts of discrimination that would be in keeping with what the framers of the Rules envisioned in fashioning Rule 8(b).

*Id*.

The reason the Court held a hearing in this case is because the Court could not tell from reading the First Amended Complaint which of the "untold causes of action" Plaintiffs intended to assert. The complaint and First Amended Complaint contain a similar allegation as the complaint in *Davis*, although in the case of the First Amended Complaint the causes of action are linked to each plaintiff. Count I is styled a claim for "race discrimination" and "racial harassment." Although racial harassment is a form of race discrimination and the allegations are clearly intended to support a claim for racial harassment, each Plaintiff is also alleged to have been subject to "discrimination and harassment" that included "racial slurs . . . discipline, assignments, intimidation, disparate treatment, as well as other terms and conditions of employment." (*See, e.g.*, Doc. #16, ¶ 21.) Each and every plaintiff asserts that "the harassment has included discipline, intimidation, heightened scrutiny, harder and dirty job assignments and disparate application of work rules and policies." (*See, e.g.*, Doc. #16, ¶ 30.) Like the complaint in *Davis*, "[t]his all-encompassing discrimination [gives] the [twelve] named plaintiffs untold causes of action." *Id*. The fact that the Court had to guess which causes of action Plaintiffs were bringing is reason enough to find that Count I fails to

meet the pleading standards of *Twombly* and *Iqbal*.[3]

At the hearing, counsel for Plaintiffs clarified for the Court that Count I asserts only a claim for racial harassment under § 1981. The Court's concern about "untold causes of action" lurking in Count I's copy-and-paste allegations is not mere nitpicking. In the *Davis* case, the plaintiffs conducted discovery on claims that were not included in the complaint and attempted to create claims through arguments in their brief on appeal based on confusion as to which plaintiff was asserting which claim. 516 F.3d at 973–75, 977. The *Davis* court noted that it took "several rounds of pleadings . . . for the court even to begin the process of narrowing the issues" and that, as a result of the shotgun pleadings, "the [district] court missed some claims altogether" in its summary judgment analysis. *Id.* at 981. The potential exists for the same problems to occur in this case because the First Amended Complaint combines vague allegations of fact with sweeping statements of "all-encompassing discrimination" attributed to twelve plaintiffs without any differentiation. The Court would prefer to narrow the issues now before allowing the case to proceed to discovery. As Judge Tjoflat states in his latest remarks on the problems with shotgun pleadings, "[w]hy should parties wait until discovery to identify, with precision, the subject of the litigation? That is exactly backward. Civil pleadings are supposed to mark the boundaries of discovery; discovery is not supposed to substitute for definite pleading." *Paylor v. Hartford Fire Ins.*

---

[3] The use of the words "disparate treatment" and "disparate application of work rules," as well as facts relevant to separate causes of action, such as retaliation and discriminatory denial of overtime, indicate to the Court that Plaintiffs' claims were not limited to only racial harassment. (*See, e.g.*, Doc. #16, ¶¶ 30, 46, 78.)

*Co.*, No. 13-12696, 2014 WL 1363544, __ F.3d __ (11th Cir. Apr. 8, 2014).

Frustration notwithstanding, the Court will allow Plaintiffs a final opportunity to re-plead Count I. Plaintiffs' argument at the hearing that claims for racial harassment are not discrete acts and, therefore, cannot be plead with the same specificity as a discriminatory termination claim is well-taken. However, this does not excuse Plaintiffs from pleading specific facts that correspond to what *each specific* plaintiff experienced to give rise to a plausible claim for racial harassment with respect to that particular plaintiff. Plaintiffs need to provide examples of the context in which the racial epithets were used that would plausibly allege a claim for racial harassment. *See McCann v. Tillman*, 526 F.3d 1370, 1378–79 (11th Cir. 2008) (finding no hostile work environment where racial epithets were uttered sporadically, no racial epithets were directed at the plaintiff, and other racial epithets were not spoken in the plaintiff's presence); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276–77 (11th Cir. 2002) (stating that "Title VII is only implicated in the case of a workplace that is 'permeated with discriminatory intimidation, ridicule and insult,' not where there is the 'mere utterance of an . . . epithet'") (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21)); *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982) (stating that "the mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not affect the terms, conditions, or privileges of employment to a sufficiently significant degree to violate Title VII") (internal quotation and citation omitted).

The Court cannot evaluate the plausibility of Plaintiffs' racial harassment claim based on the standards expressed in the cases cited above until, as requested by this Court

repeatedly now, Plaintiffs give examples of "when the statements are alleged to have been made, or by whom, or to whom, or where" and approximately how frequently and over what time period. (Doc. #14, at 2) (quoting UTM's brief).[4] Of course, Plaintiffs are not expected to recount every discrete act of harassment they experienced. Further, if Plaintiffs were similarly situated and collectively experienced the same harassment, then the complaint need not repeat the allegation verbatim for each plaintiff but must state facts clarifying which racial epithets Plaintiffs experienced in common. For example, if all twelve plaintiffs used the restroom with racially offensive graffiti, then the complaint may simply say so. But Plaintiffs must plead sufficient facts to create a plausible claim that they were subjected to racial harassment on an individual basis and may not lump general allegations together in an undifferentiated manner.

Since the Court is permitting Plaintiffs a final chance to re-plead their § 1981 racial harassment claim, UTM's motion to dismiss Count I is DENIED with leave to refile.[5] The Court warns Plaintiffs that if the Second Amended Complaint is not pled in accordance with the principles outlined in this Memorandum Opinion and Order, the Court may dismiss this count with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to follow a court order. *See Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556

---

[4] Plaintiffs' generic allegations that the harassing conduct "has been continuing in nature . . . and is still continuing today" are insufficient to allege plausibly that the harassment was pervasive. (Doc. #16, at ¶¶ 31, 47, 63, 79, 95, 111, 127, 143, 159, 175, 191, 207.)

[5] Plaintiffs represented to the Court at the hearing that their § 1981 claim in Count I was limited to a racial harassment claim. Plaintiffs may not use this order to re-plead Count I as an opportunity to add new claims.

F.3d 1232 (11th Cir. 2009) (upholding dismissal of complaint with prejudice pursuant to 41(b) after plaintiff failed to re-plead claims in accordance with district court's instructions). Independently of this, UTM may file another Rule 12(b)(6) motion to dismiss if warranted, which the Court will rule on accordingly.

**B.     State Law Claims**

UTM moves to dismiss Plaintiffs' outrage claim on the grounds that the conduct alleged in the First Amended Complaint is not sufficiently severe to satisfy Alabama law, and moves to dismiss the claims for negligent/wanton supervision/training/retention on the grounds that they are dependent on the underlying state law tort for outrage, which, Defendants argue, fails as a matter of law. (Doc. #18.) In light of the fact that the Court will allow Plaintiffs to re-plead their § 1981 racial harassment claim, it would be premature to rule on whether they state a claim for outrage since the racial harassment provides the factual basis for this claim. However, the Court can speak to certain disputes that were discussed in the briefs and at oral argument for clarification.

Under Alabama law, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress." *Am. Rd. Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980). "The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it." *Id*. The Alabama Supreme Court "has consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors,*

12

*Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993). The *Thomas* court surveyed the twelve years of cases following *Inmon*, in which the Alabama Supreme Court first recognized the tort of outrage, and found that the tort of outrage had been recognized as a viable claim in only three circumstances: (1) cases having to do with wrongful conduct in the context of family burials; (2) cases where insurance companies used barbaric means in attempting to coerce insurance settlements; and (3) cases involving egregious sexual harassment. *Id*. The court in *Potts v. Hayes* reaffirmed the limitations of outrage as a cause of action under Alabama law, and repeated *Thomas'*s observation that outrage has been recognized only in regard to the three kinds of conduct previously enumerated.

Although *Thomas* and *Potts* appear to limit recovery for outrage to three specific categories of conduct, the court in *Little v. Robinson* stated that it is not the case that "the tort of outrage is viable in only the three circumstances noted in *Potts*." 72 So. 3d 1168, 1172–73 (Ala. 2011). The *Little* court noted it had recently affirmed a judgment of an outrage claim that did not involve any of the three circumstances listed in *Thomas* and *Potts*. *Id.* at 1173 (citing *O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011) (upholding outrage judgment against a family physician that parents sent boy to for counseling but who exchanged addictive prescription drugs with the boy in exchange for homosexual sex, resulting in the boy's drug addiction)). *Little* makes clear that outrage claims are not strictly limited to the three categories noted in *Thomas* and *Potts*, but that the inquiry is rather on whether the conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." 72

So. 3d at 1173 (quoting *Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 631 (Ala. 2010)).

Turning to the employment context, it is clear that an employee may assert an outrage claim against an employer based on sexual harassment even without consideration of *Little* since egregious sexual harassment is one of the categories of outrage recognized in *Thomas* and *Potts*. *See Busby v. Truswal Sys. Corp.*, 551 So. 2d 322 (Ala. 1989) (per curiam) (finding that plaintiff could base outrage claim on supervisor's sexual harassment but that supervisor's conduct did not create liability for employer); *see also Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1354–55 (M.D. Ala. 2009) (holding triable issue on outrage based on sexual harassment and citing *Busby*); *Scott v. Estes*, 60 F. Supp. 2d 1260, 1275–76 (M.D. Ala.) (basing conclusion that plaintiff stated cause of action for outrage only on allegations of sexual harassment even though plaintiff also sued for disability discrimination); *Quillen v. Am. Tobacco Co.*, 874 F. Supp. 1285, 1297–98 (M.D. Ala. 1995) (finding triable issue on outrage based on sexual harassment). The more difficult cases arise in employment contexts, such as this one, that involve allegations of other sorts of harassment or discrimination.

Courts in this district, including this Court, have generally dismissed outrage claims in the employment context that fall outside the three categories listed in *Thomas* and *Potts*. However, the cases surveyed by the Court generally do not treat the failure of an outrage claim to fall into a recognized category under *Thomas* and *Pitts* as an absolute bar, but do consider this fact to weigh against a finding that the relevant conduct was extreme and outrageous. *See, e.g.*, *Short v. Mando Am. Corp.*, 805 F. Supp. 2d 1246, 1276–77 (M.D. Ala.

2011) (Fuller, J.) (finding that outrage claim based on race and national origin discrimination does not fall into any *Thomas* category but also that relevant conduct was not extreme and outrageous); *Bahadirli v. Domino's Pizza*, 873 F. Supp. 1528, 1538 (M.D. Ala. 1995) (declining to exercise supplemental jurisdiction over outrage claim based on national origin discrimination on the grounds that it presented a novel and complex issue of state law since it did not fall into recognized category of outrage claims); *Walker v. City of Elba*, 874 F. Supp. 361, 364–65 (M.D. Ala. 1994) (stating that outrage claim based on racially discriminatory termination "falls into neither of the categories enunciated by the Alabama Supreme Court in *Thomas*" but going on to find there was no substantial evidence of outrageous conduct); *Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1509–10 (M.D. Ala. 1994) (noting outrage claim based on racial harassment did not fit into any *Thomas* category but also finding facts not "so poignant as to rise to the level of outrage").  Thus, although the Court has not uncovered an Alabama case that has recognized an outrage claim in the employment context based on racial harassment, such a claim could exist if the relevant conduct were sufficiently extreme and outrageous.  However, even in the light of *Little*, the Court would be willing to recognize a cause of action for outrage based on racial harassment only in extreme circumstances absent precedent from an Alabama appellate court.

In conclusion, the Court cannot rule on UTM's motion to dismiss Plaintiffs' state law claims until Plaintiffs re-plead Count I.  Since the Court still lacks such information as who said which epithet, whether the epithets were directed at Plaintiffs, were said in the presence of Plaintiffs, or were only comments Plaintiffs were aware of, the Court declines to rule on

UTM's motion do dismiss the state law claims in the First Amended Complaint. Therefore, the Court DENIES UTM's motion to dismiss Plaintiffs' state law claims with leave to refile.

## V. CONCLUSION

For the reasons discussed above, it is hereby ORDERED that UTM's Motion to Dismiss the First Amended Complaint (Doc. #18) is DENIED with leave to refile. It is further ORDERED that Plaintiffs file a Second Amended Complaint addressing the deficiencies noted in this Memorandum Opinion and Order within twenty-one days of the entry of this order.

DONE this the 23rd day of June, 2014.

                                              /s/    Mark E. Fuller
                                        UNITED STATES DISTRICT JUDGE